Jasne & Florio, L.L.P.
*Attorneys for Plaintiff*
30 Glenn Street, Suite 103
White Plains, New York 10603
(914) 997-1212
hgj@jasneflorio.com

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------------

| | | |
|---|---|---|
| SHERRY GRIMES-JENKINS, | : | Civil Action No: |
| | : | |
| Plaintiff, | : | |
| | : | **Plaintiff hereby submits a Demand for** |
| -against- | : | **Trial by Jury accompanying this Pleading** |
| | : | |
| CONSOLIDATED EDISON COMPANY | : | **RELATED ACTION TO** |
| OF NEW YORK, INC., & SEAN GREEN | : | Civil Action No: 1:16-cv-04897 |
| Individually, | : | |
| | : | |
| Defendants. | : | |

-----------------------------------------------------------------------

### PLAINTIFF'S VERIFIED COMPLAINT

Plaintiff, SHERRY GRIMES-JENKINS, by and through her attorneys, JASNE & FLORIO, L.L.P., as and for a Verified Complaint against the Defendants, CONSOLIDATED EDISON COMPANY OF NEW YORK, INC., and SEAN GREEN individually, respectfully set(s) forth and allege(s) as follows:

### NATURE OF ACTION

1.  This complaint is an action brought against Defendant CONSOLIDATED EDISON COMPANY OF NEW YORK, INC. (hereinafter "ConEd") pursuant to the New York State Human Rights law, N.Y. Exec. Law §§ 290 to 297; the New York City Human Rights law, N.Y. City Admin. Code §§ 8-101 to 131; and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2 et seq., to recover money damages for, *inter alia*, retaliation, sexual

harassment, employee harassment, unlawful employment practices, hostile work environment, and wrongful termination.

2.       Additionally, this action is brought against Defendant SEAN GREEN individually (hereinafter "Green") to recover money damages for sexual harassment, assault and battery, intentional and negligent infliction of emotional distress and *prima facie* tort.

3.       Finally, this action is brought against ConEd as Plaintiff's employer for employee harassment stemming from the sexual harassment of Plaintiff by its employee, Defendant Green.

4.       At all times herein, the employees and agents of the Defendant ConEd, including Defendant Green, engaged in a practice of harassment and unlawful employment practices.

5.       Furthermore, the employees and agents of Defendant ConEd further engaged in various unlawful employment practices against the Plaintiff on the basis of Plaintiff's race and sex, including repeated instances of disparate treatment and hostile work environment as more fully set forth herein.

6.       Plaintiff has a separate ongoing civil matter with the Defendant ConEd, which matter is pending in the  United States District Court for the Southern District of New York under Civil Action No: 1:16-cv-04897, (AT) (JCF). As part of that action, Plaintiff pled claims of violations of various statutes including Title VII, the New York State Human Rights Law and the New York City Human Rights Law on the basis of discrimination, retaliation, and hostile working environment as well as the long standing nature of these acts pursuant to the continuing violation doctrine.

7.       The instant action is a further manifestation of the acts complained of in the pending litigation and is a continuation of the harassment, retaliation and unlawful employment

practices complained of by Plaintiff therein, coupled with specific and new allegations against Defendant Green specifically, and against Defendant ConEd on the basis of imputed liability.

8.     This action is another in the series of notorious acts and violations which ConEd employees routinely engage in and which ConEd as the employer tolerates if not condones.

9.     Plaintiff has made continued complaints to ConEd's Human Resources Department, Equal Employment Office (known now as the Office of Diversity and Inclusion), and her Union Representatives regarding the hostile work environment, sexual and racial discrimination and harassment, and unlawful employment practices of Defendant ConEd, as well as of the sexual harassment she suffered at the hands of Defendant Green and other ConEd employees, all of which have been unresolved or otherwise unaddressed in any meaningful manner by Defendant ConEd.

10.    On or about November 9, 2016, Plaintiff filed a claim with the U.S. Equal Opportunity Employment Commission (hereinafter "EEOC"). While the EEOC Charge cited "Retaliation" as the underlying discrimination, along with her claim, Plaintiff filed a two-page letter with the EEOC describing the sexual harassment by Defendant Green. *See* Plaintiff's initial EEOC filing, annexed hereto as **EXHIBIT "A"**.

11.    On April 28, 2017, Plaintiff filed an addendum letter with the EEOC concerning ongoing retaliation by Defendant ConEd. *See* April 28, 2017 letter to EEOC, annexed hereto as **EXHIBIT "B"**.

12.    Thereafter, on or about July 12, 2017, Plaintiff filed an addendum to her original charge letter specifically reciting the retaliation, disparate treatment, sexual harassment and hostile work

environment she has had to endure since filing her previous law suit as noted above. *See* EEO Charge dated July 11, 2017, annexed hereto as **EXHIBIT "C"**.

13. On November 20, 2017, the EEOC issued a "Right to Sue Letter" to Plaintiff granting her permission to legally pursue her action against Defendants ConEd and Green. *See* November 20, 2017 Right to Sue Letter, annexed hereto as **EXHIBIT "D"**.

14. Pursuant to the Statute of Limitations for Title VII matters, Plaintiff's allegations must have arisen within 300 days prior to the filing of her EEOC Complaint, or no earlier than January 14, 2016. As clearly shown herein below, Plaintiff's claims are timely made. Notably, while some of the allegations against Defendant ConEd contained herein below are outside the applicable statutory limit, such allegations are included as significant background evidence in support of Plaintiff's timely claims and in support of the fact that ConEd had not only constructive notice but actual notice as well.

## JURISDICTION AND VENUE

15. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1332, and pursuant to 42 U.S.C. §§ 2000 (e). Pendent jurisdiction is also invoked pursuant to New York City and New York State statutes in accord with 28 U.S.C. Section 1367(a).

16. Pursuant to 28 U.S.C. § 1391(b) and (c), venue in this District is proper because the Defendant's principal place of business is located in this District, the Defendant does business within this District and because some of the causes of action, acts and omissions complained of, occurred within this District.

17. The aforesaid November 9, 2016 Charge of Discrimination filed by Plaintiff with the U.S. Equal Employment Opportunity Commission sounding in retaliation arises from multiple

incidents that occurred from and after April 2016, but specifically in September 2016, which incidents forms the basis for this Complaint (sometimes hereinafter the "Green Incident").

18. Upon information and belief the Green Incident arises at least in part as a direct result of the prior incidents Plaintiff as well as numerous other employees similarly suffered within ConEd.

19. Arising from the Green Incident, on or about November 20, 2017, the EEOC issued Plaintiff a Notice of Right to Sue (hereinafter "Right to Sue Letter" and/or "RTS Letter") which gives Plaintiff the right to sue within 90 days of the date of the letter.

20. As such, this action is timely commenced as it is being filed within 90 days thereof.

21. Under Title VII, Plaintiff may sue for any incident related to her EEOC Charge within 300 days of the Charge letter or January 14, 2016.

22. Under the New York State and New York City Human Rights Law statutes, the applicable Statute of Limitations is three (3) years.

## THE PARTIES and
## FACTUAL ALLEGATIONS RELEVANT TO ALL CAUSES OF ACTION

23. At all times hereinafter mentioned, the Plaintiff SHERRY GRIMES-JENKINS (hereinafter "Grimes" or "Plaintiff") resided in the County of Putnam, State of New York.

24. At all times hereinafter mentioned, the Plaintiff was an employee of the Defendant ConEd from July 1, 1990 to July 24, 2017, at which time she was fired by Defendant ConEd.

25. Upon information and belief the firing of Plaintiff was not for job related insufficiencies.

26. Upon information and belief, at all times hereinafter mentioned, the Defendant Green, was an employee of the Defendant ConEd.

27.   At all times hereinafter mentioned, Defendant ConEd, was and is a domestic business corporation duly organized and existing under and by virtue of, the laws of the State of New York.

28.   At all times hereinafter mentioned, Defendant ConEd maintained its principal place of business at 4 Irving Place, New York, N.Y., 10003.

29.   At all times hereinafter mentioned, Defendant ConEd was an "employer" within the meaning of 42 U.S.C. § 2000e of Title VII, the New York State Human Rights Law § 292, and the New York City Human Rights Law § 102.

30.   At all times hereinafter mentioned, Defendant ConEd was liable for its employees discriminatory behavior under Title VII, the New York State Human Rights Law and the New York City Human Rights Law.

31.   ConEd, by its' website, states a policy regarding diversity and inclusion. ConEd routinely allows and condones the violation of its' own policies including but not limited to such as stated on its website:

> Diversity at Con Edison
> The people of Con Edison are our greatest strength. Our 15,000 women and men come from different cultures, backgrounds, and experiences, and reflect the diversity of the neighborhoods we serve. Our different perspectives help us see the bigger picture as we power the lives and livelihoods of the 10 million people we serve. We are proud of our culture of fairness, respect, and inclusion. It makes us a stronger company, and it helps us to do a better job of serving you.

32.   Beginning in the year 1990 and continuing to the time Plaintiff was terminated on July 24, 2017, the Plaintiff was employed by the Defendant ConEd full time.

33.   During the aforesaid period, the Defendant ConEd employed various supervisors, managers and human resource representatives, each of whom had immediate or successively higher

authority over the Plaintiff.

34.   That during the aforesaid period, the said supervisors, managers and human resource representatives had the ability to take tangible employment action on behalf of the Defendant ConEd, such as hiring, firing, promoting, transferring, disciplining, and overseeing the daily work and assignments of employees of the Defendant employer, including the Plaintiff and her supervisors and managers.

35.   That during the aforesaid period, the said supervisors, managers and human resource representatives acted within the scope of their employment, and/or duties as supervisors, managers, employees and/or agents of ConEd.

36.   That the Plaintiff is a 45 year old black West Indian female who began working at ConEd at the age of 17 as part of a high school cooperative program in 1990.

37.   Beginning almost immediately after she started her job, Plaintiff has been subjected to sexual and racial harassment and discrimination, retaliation, and hostile work environment.

38.   Such acts of sexual and racial harassment, discrimination, retaliation, and hostile work environment continued up until the time Plantiff was fired, upon information and belief at least in part due to the Plaintiff reporting such acts by various employees of ConEd.

39.   Plaintiff has been repeatedly, intentionally and maliciously retaliated against, discriminated against, threatened, abused and harassed by co-workers, primarily male, but some female co-workers, supervisors, managers and human resource representatives of the Defendant ConEd, whose harassing and discriminatory conduct has included, but was not limited to: intimidating/hostile and offensive slurs, jokes, comments and inquiries, threatening and abusive verbal communications, ridicule and insults, and overt and unwelcome sexual

contact.

40.    Plaintiff was treated differently from other employees based on her race and sex, was sexually harassed and humiliated, retaliated against, lost the opportunity for promotions, and was denied potential raises, promotions and opportunities for advancement within the Company, including management opportunities, was wrongfully given unfavorable employee evaluations and ratings, was isolated from other employees and denied training, was the subject of intimidation, was verbally threatened and was otherwise treated differently from co-workers based on her race and sex.

41.    Plaintiff was sexually abused on multiple occasions at the hands of Defendant Green during working hours and on the premises of one of the Defendant ConEd's substations.

42.    Plaintiff declined to file a private action against Defendant Green for sexual assault and battery, as well as for intentional and negligent infliction of emotional distress, among other causes of action, as a direct result of the fear of physical and permanent harm and injury and therein opted to file with the internal office of ConEd and subsequently with the EEOC.

43.    The acts complained of herein including, specifically the sexual abuse by Defendant Green of Plaintiff, were routinely reported by Plaintiff to representatives and management of ConEd and to their internal Human Resources Department as well, though in accord with what is, upon information and belief, characteristic of the culture of ConEd, the internal investigations undertaken by Defendant ConEd were universally deemed unfounded.

44.    Nonetheless, the specific acts as set forth herein arise, at least in part, from the Plaintiff's suffering the aforesaid sexual harassment at the hands of her co-worker, Defendant Green, which, as stated, was reported to ConEd as against the "code of silence" perpetuated

throughout the Company.

45. Upon information and belief at all times herein, including dating back to the acts for which the statute of limitations has expired, ConEd managers, supervisors, administrators and directors had actual knowledge of, and knowledge as to, the "code of silence" as to reporting such acts and such was accepted and condoned.

46. Upon information and belief at all times herein, including dating back to the acts for which the statute of limitations has expired, ConEd managers, supervisors, administrators and directors had at least no less than constructive notice of, and knowledge as to, the "code of silence" as to reporting such acts and such was accepted and condoned.

47. Upon information and belief, the reporting of the sexual harassment or breaking of the "code of silence" as to said acts perpetrated against the Plaintiff hereto, although other stated acts are past the applicable statute of limitations, are the reason for the repeated acts and retaliation against the Plaintiff as set forth herein forming the basis of this action.

48. The substantial acts and instances of sexual harassment and discrimination which occurred prior to January 14, 2016 (300 days prior to the EEOC filing for purposes of the earliest timely act) for purposes of Title VII or prior to February 20, 2015 (three years prior to the date of filing of this Complaint) and which are therefore outside of the applicable Statutes of Limitations under the NYSHRL and the NYCHRL, nonetheless serve as the basis for the pattern of behavior by Defendant ConEd, by and through its employees and supervisors, over the course of more than 20 years, and gives rise to Plaintiff's hostile work environment claims under the continuing violation doctrine and are set forth to provide a meaningful factual background for Plaintiff's causes of action for events and occurrences that took place

since February 20, 2015 (for purposes of the NYSHRL and NYCHRL) and since January 14, 2016 (for purposes of Title VII) including the sexual harassment by Defendant Green, and of which the Defendant ConEd had notice of since at least that time.

49. The failure of the Plaintiff to remain silent as to all such acts in violation of the tacitly accepted and condoned culture and "code of silence" has served as a further basis for the current complained of acts.

50. As to the potential untimeliness of the causes of action alleged against Defendant Green, Plaintiff submits that such was the result of her submitting the matter to her employer, Defendant ConEd, the submission of her charge to the EEOC, and the length of time between the charge and the EEOC Right to Sue determination. While such actions caused Plaintiff to wait to allow the proper systems to handle this employment discrimination matter, such also caused the Statute of Limitations to run on Plaintiff's state causes of action against Defendant Green. It is therefore respectfully submitted by Plaintiff that the Statute of Limitations for such state causes of action be tolled during the pendency of the EEOC investigation leading to the Right to Sue letter.

51. To be clear, the specific acts of sexual harassment, and assault and battery involving Defendant Green and which gave rise to the November 2017 Right to Sue letter, were committed by Defendant Green approximately two (2) months before Plaintiff filed her Charge with the EEOC. As such, these claims are more than timely. Other allegations of sexual harassment, abuse and retaliation, which occurred since January 2016, had previously been reported to Defendant ConEd and are therefore timely and specifically part of the EEOC Charge, **EXHIBIT A**.

52.   In addition to the sexual abuse and harassment, Plaintiff was routinely denied courtesies such as transfers and accommodations such as requesting to not be "fit tested" by one of the perpetrators of the sexual harassment about whom Plaintiff complained to Defendant ConEd.

53.   Additionally Plaintiff was slandered and ostracized as a form of retaliation to "make her life more difficult".

54.   By way of background and in support of Plaintiff's allegations of continuing hostile work environment, the past actions perpetrated against the Plaintiff, for which she refused to remain silent, first began in the Spring of 1991, when a group of employees of the Defendant, namely Michael Butchar, Charlie Thompson, Joe Tambini and Frank Morgan, turned off all the lights in the building at the Hellgate Substation in the Bronx, surrounded the Plaintiff in one of the rooms at the substation, pushed her up against a table and sexually assaulted the Plaintiff which included the physical touching of sensitive parts of the body of the Plaintiff.

55.   Upon information and belief, subsequently these individuals were overheard by a female co-worker named Joanna Schaffer bragging about what they did to the Plaintiff and Joanna Schaffer reported the incident to Pamela Delasanno, the EEO Officer at the company. The incident was also reported to the Shop Steward, Rodney Mullings, and to supervisor Tom Coyne and the General Manager, Jimmy Minella and section manager George Gerbacia.

56.   ConEd took no action as to the aforesaid incident.

57.   Rodney Mullings, Shop Steward, said to the Plaintiff "I do not see your problem, you act like no one has ever touched your ass before".

58.   As and for acts constituting continuing violations of Title VII, the NYS and NYC Human Rights Law on the basis of hostile work environment, during the period of 1990 through

1993, Plaintiff was repeatedly told by co-employees and supervisors, including but not limited to Paddy Duggan, Andy Marino, Charlie Thompson, Ralph Gaverez and Bobby Parsons, that she was not wanted on the job, indeed that all females were not wanted on the job and was ordered to engage in activities not appropriate for her level of seniority. Supervisors Tom Coyne and Bensettler trained male employees on how to read drawings, but denied that training to the Plaintiff. Plaintiff was told that the male employees "left their wives home to come to work and they shouldn't have to be bothered working with women". During said period, Billy Rush, Odell, Jeff Danne, Omar Simmonds, Rinaldo Brown, Wright, Diaz, Tom McEnery, Mike Lentini, Frank Morgan, Michael Butchar, Rudy Seeloch, Alfred Incle and many more were assigned to certain jobs that were denied to the Plaintiff because of her sex, and she was not given the same opportunities and support from the aforementioned supervisors.

59. In July of 1991, Plaintiff was told by Paddy Duggan that they did not want females on the job to nag them and that they shouldn't have to be bothered working with women.

60. In December of 1992 at the Hellgate Substation, supervisor Nick Frebrizio repeatedly made sexual advances to the Plaintiff, asking if he could come to her apartment and stating that he was sexually attracted to her and wanted to have sex with her. When Plaintiff refused those advances, Frebrizio became angry and upset and thereafter began harassing her on the job and writing her up for infractions on the job that she had not committed. A meeting was held that year in which Frebrizio admitted to Shop Steward Robert Parsons and supervisor Bensettler, that he had made sexual advances to the Plaintiff. At that meeting, Frebrizio stated that he was "uncomfortable" around the Plaintiff and that she needed to be transferred

to a different location. Shortly thereafter the Plaintiff was transferred to the 179th Street station. Later in 1993, Plaintiff told Nick Frebrizio that was pregnant and Frebrizio became upset and sought to transfer Plaintiff to a less desirable Manhattan based location, from her original Bronx based location, all due to retaliation because of the reporting of Frebrizio's sexual harassment and Plaintiff's pregnancy.

61.     In 1993, during Plaintiff's first pregnancy, Febrizio stated to the Plaintiff that the managers "didn't want her around and didn't know what to do with her because she was pregnant". In that year, Plaintiff was not afforded with the opportunity for training for her B title. She was also suspended 16 hours in November of 1993 because of her pregnancy. She was told by Febrizio and others that because of her pregnancy she was "a liability" if she stayed on the job.

62.     After returning from pregnancy leave in 1994, at the North Queens location, Plaintiff was forced to work the night shift despite the fact that she had a newborn at home. That situation was reported to Area Manager George Gerbacia and Union representative Eddie Leighbright, but no action was taken and she was told that if she couldn't work the night shift she would be "written up" to management. Leighbright said to the Plaintiff "no one wants you here" and "everyone here feels they must walk on egg shells because you to turn people into the EEOC". Additionally, Plaintiff was told, "no one cares if you have a nursing baby and you have to work the night shift like everyone else". At that time, Plaintiff was using a pump to pump breast milk  but was laughed at by co-employees, denied any facility or that purpose and was told by Eddie Leighbright "not to put that crap" in an employee refrigerator at the work site. Leighbright also told her that "no one wants you here". Plaintiff also spoke to

Mechanic A Bob Avery about the night shift work and he laughed at her and said "If you have a problem, bring your kid to work with you at night". That statement was reported to Section Manager Gerbacia, but nothing was done. To the contrary, she was given a verbal warning and Gerbacia threatened to write her up.

63.   As far back as the summer of 1994, Plaintiff was once again denied training for her B title while male co-workers who had been hired after her were provided with the training and promoted.

64.   In 1996 the Plaintiff was assigned to the Astoria Barge Station, which had no other female workers. Astoria Barge Supervisor "Beetle Juice" Tony made many sexual advances to the Plaintiff while on the job with her on the night shift, saying that he heard she was a model, that she was very pretty and had a nice body, and that he wanted to have sex with her. He tried on several occasions to get her into dark places with him, but she refused his advances.

65.   Over the course of time, upon information and belief Bettle Juice Tony became increasingly angry and threatened the Plaintiff physically, one night forcing the Plantiff to cut a cable which he knew or reasonably should have known was live, at which time she was knocked to the ground. That incident and his sexual advances were reported to supervisor Jimmy Carr but no action was taken. Jimmy Carr told the Plaintiff that she "just can't seem to stay out of trouble" and threatened to write up her up for the cable cutting explosion.

66.   Also in 1996, Mechanic A Kenny Meyowitz said repeatedly to the Plaintiff that "I don't want this bitch on my job."

67.   In 1999, male employees were routinely awarded extra points on the "A Title" test so they could pass, but Plaintiff was told by Jimmy Carr that she failed the test by .5 points and

should ask Joe Abrano for the additional .5 points. That request was summarily denied.

68.    Notably, some employees upon information and belief Thomas McEnery was awarded the A Title without taking, let alone passing the test, stating that all he did was buy a cup of coffee for the instructor and he passed.

69.    In August of 2000 at the 42nd Street Substation, male employees were provided with a male only bathroom and a male only shower, but the Plaintiff and other females were denied access to those facilities by her supervisors Jimmy Carr and Eric Galloza who told her to use the sink to wash up. Plaintiff reported that situation to Supervisor Toto who told her to use the shower but restricted the times that she could use it. Galloza found out that Supervisor Toto had allowed Plaintiff and other females including Nicole Hobbs to shower and wrote the Plaintiff up for using the shower, and also for using the showers too early, even though they had been given permission by Supervisor Toto under the theory the women would shower before the men.

70.    Subsequently, Plaintiff was refused access to the shower at the 42nd Street Station and told by Eric Galloza to walk to other facilities in the 49th Street station "that could be used by women". Although at first review this might appear innocuous, in reality not only were there two bathrooms at 42nd Street, but further, by having to travel to another location the Plaintiff would have been outside the designated wash up time.

71.    In March of 2003, pornographic photographs of scantily clad and/or partially undressed women were posted in the employee trailer by co-employee Roger Mahes. When Plaintiff complained to supervisor Eric Gallazo, Mahes approached the Plaintiff and cursed at her. Gallazo, rather than taking corrective action, threatened the Plaintiff and gave her a verbal

warning. Shop Steward Tom Syphertt was a witness to that incident. When Plaintiff reported the incident to the company EEO, no action was taken, instead Plaintiff was refused all access to the employee trailer by Gallazo and had to eat and take breaks in her car.

72.    In 2004, Plaintiff was told by Phil Burton outside the 42nd Street Station that "you are a woman and they will never hire you into management". When Plaintiff said that a woman can do the job, Burton laughed and said the company would use other excuses not to promote her.

73.    Plaintiff continued to report these incidents to the company human resource department EEO and during a meeting with EEO representative Yanis Thomas, that representative told the Plaintiff that "the guys got together and falsely accused you of making a racial slur against Meyowitz". Thomas suggested to the Plaintiff that she "go outside the company and complain because the company is not giving you fair justice and things keep coming back unfounded".

74.    During the period from 2006 through 2008, Plaintiff was on the Team Program in Public Affairs, but was demoted from that position because she was from a nontraditional background for women and because of the slander of her name within the company. She was told by Deloris Adams that Michael Butchar had told the Director of Public Affairs Department that the Plaintiff was trouble and liked to turn in others to the EEO.

75.    In 2008, the Plaintiff was demoted back to the East River location. New employees, including Defendant Green and Sean O'Brien would not work with her because they were told that she was trouble. They were told to stay away from the Plaintiff. These comments were made by supervisor Ralph Garcia and others. Garcia had shown the Plaintiff's

confidential employment evaluations to the other workers and told the other workers that the Plaintiff was demoted because no one wanted to work with her and that the only reason that she was given the job in Public Affairs was to shut her up and to give them an opportunity to fire her while she was in management.

76. During the period from 2009 through 2011, Supervisor Darlene Wells repeatedly made sexual advances toward the Plaintiff taking her out in the company car while working and touching Plaintiff's inner thigh while talking about sexual matters, touching the Plaintiff's body while in the office and confronting the Plaintiff while in the bathroom. These advances were rejected by the Plaintiff resulting in continued harassment and retaliation. This situation was reported to Manager Gina Callendar, but no action was taken.

77. Throughout her employment with ConEd, Plaintiff was passed up for jobs and promotions to which she was qualified that were given to male employees who were less qualified for the job or promotion, some not qualified at all. In 2011, Thomas Nolan was promoted into a job that the Plaintiff was more qualified for. When Plaintiff questioned that promotion she was told that she was not qualified because she had taken sick time. In 2014, Plaintiff was denied the opportunity to replace a supervisor who was leaving named Vormittagg, who told her that "you don't want this job, you have young kids and, cannot help your family". Male co-workers who were less qualified, were encouraged to apply for that position.

78. Shortly thereafter, Devri Gibbs asked Tye Barnes, in the Plaintiff's presence, if he liked the Plaintiff's "big ass" and if he "wants to fuck that big ass". Barnes laughed and responded that "not everyone is into that". Instead of action being taken in response to the complaints of that episode, the Plaintiff was isolated from other workers, and was told not to speak to anyone

or she would be "thrown back into the fields" by Eric Galloza. Co-worker Howie Sheard said that the workers and management can't trust her and that she has to be put in isolation "because they don't want you in the general population". Co-worker Walter Davis said that the employees threatened to boycott the job if she comes to their location.

79.   In June 2013, while preparing a retirement party for Mechanic Mike Irrizary, Devri Gibbs followed the Plaintiff around the station and in front of male mechanics shouted "Look at her big ass. Sherry, your big ass just goes from side to side". When the Plaintiff complained to Tye Barnes, who was present in the station, Barnes did nothing to stop Devri Gibbs. In July 2013, Plaintiff fell out of her chair in the lunchroom and Devri Gibbs and Rodney Braff said to other employees, "her ass is so big, she bounced up to the ceiling and bounced a couple of times." Plaintiff informed the Section Manager Eric Galloza, but he did nothing and instead threatened Plaintiff to keep her mouth shut.

80.   On July 18, 2013, while Plaintiff was signing in to work, Devri Gibbs came up behind the Plaintiff and pretended to grab and pinch her buttocks and said, "Sherry, you have a big ass." The Plaintiff pulled Gibbs aside and asked her to stop and that she didn't like Gibbs' comments, however, Gibbs got angry at Plaintiff and retaliated by alleging to management that Plaintiff had joked about Barnes' stuttering. This was not true, but Plaintiff got called into a meeting with Galloza where she was confronted about making such a joke, the actions of Gibbs being left unaddressed, and she ultimately entered a voluntary suspension in January of 2014.

81.   In 2013, Mechanic A. McEnery, Nolan, Galloza and Jaworsky all told the Plaintiff that they rated male mechanics higher than female mechanics, saying specifically that the males were

"top of the barrel mechanics" and that the females were "all at the bottom of the barrel".

82. On November 6, 2013, Plaintiff complained to Jennifer Flynn in the ConEd EEO about the treatment she was receiving in regards to retaliation and discrimination. Plaintiff complained specifically in regards to receiving differential treatment (from her male co-workers) as well as being singled out and written up for lateness in inclement weather, which is against the stated ConEd policy. Although the company's policy gives employees leniency until 9AM in inclement weather, Plaintiff is routinely written up when she is late under such circumstances. Plaintiff requested a transfer or an opportunity to work a flexible schedule and spoke to the Ombudsman's office about the retaliation to which she was being subjected.

83. Beginning as far back as April 2015, within the Statute of Limitations for purposes of the NYSHRL and the NYCHRL, Plaintiff has been sexually harassed and discriminated against on the basis of sex by ConEd employee Robin Yang. In fact, Yang has made numerous discriminatory comments about foreigners and illegal immigrants, and has, upon information and belief, commented that she is "tired of all these immigrants around here and I am tired of seeing them at Home Depot in Brooklyn and all over they should go back where they come from and get a better education".

84. Plaintiff informed Robin Yang that she was offended by her comment since Plaintiff, herself, is an immigrant, some of who's relatives are the very people who had to find work at Home Depot.

85. After that incident, Yang and other workers created an even more hostile and uncomfortable environment for Plaintiff. For example, Stella Polanco would, upon information and belief, come into the office where Plaintiff would be working and turn off the lights while Plaintiff

was still there.

86.  In April of 2016, Robin Yang became hostile and aggressively charged at Plaintiff in the bathroom after Plaintiff asked her to keep the ladies' room door closed while Plaintiff was using it. This behavior had been occurring more frequently in the weeks prior to April, 2016, and each time, Yang would follow Plaintiff into the bathroom and open the door while Plaintiff was using the facilities.

87.  This behavior was, scary, stressful and intimidating to Plaintiff who brought the incident to her superiors Eric Galloza, Thomas Nolan and to Bruce Gavioli, Ombudsman Yolanda Folley and to ConEd's HR Rep.

88.  Plaintiff informed her supervisor and specifically section Manager Bruce Gavioli, that Robin Yang had a reputation for this type of intimidation, however, Yang has, upon information and belief, a personal relationship with previous section manager Kenny Jackson, and has therefore gotten away with such sexual harassment in the past.

89.  As retaliation for Plaintiff making complaints against Robin Yang and the sexual harassment and intimidation that Plaintiff incurred, in April 2016 Thomas Nolan and Eric Galloza scheduled for Robin Yang to give Plaintiff her yearly fit test despite the complaints that Plaintiff had made to them and others at Defendant ConEd about the sexually harassing and intimidating behavior of Yang.

90.  Most recently, and as set forth in the EEOC Charge letter, in September 2016, at Astor substation, Defendant Green slapped Plaintiff on her posterior. When Plaintiff warned Defendant Green not to do it again, he responded that he had meant to touch Plaintiff on her hip at which point Plaintiff warned Defendant Green against touching her at all and informed

Green that if he touched Plaintiff again, she would turn him in.

91. One week later, and despite Plaintiff's prior warning, Defendant Green and Plaintiff happened to return to the job site following their lunch break at the same time. After they entered an elevator and the doors closed, Defendant Green held Plaintiff down and tried to kiss Plaintiff. As Plaintiff tried to get away from Defendant Green, who stands, upon information and belief, at 6'7" in stature, Plaintiff screamed and yelled.

92. Plaintiff asked Defendant Green why he would do that to her as she is a married woman to which Defendant Green replied "Shut the fuck up or I will do it again".

93. Plaintiff reported this incident, as well as the incidents concerning Robin Yang to her supervisors, as well as to the EEOC as noted.

94. On March 27, 2017, Plaintiff was denied a transfer by General Manager Thomas Karakantasis after she complained about sexual harassment. Plaintiff sent an email to her supervisor asking to meet with an internal investigator. As to that request, General manager Thomas Karakantasis and Eric Galloza arrived at Astor Station, where the Plaintiff already was present, at which meeting the Plaintiff was denied a Shop Steward and while there, the General Manager made references to the prior EEO cases that had been filed by Plaintiff and how upset he was about them and told the Plaintiff that she was being "thrown back into the field" as of April 2017.

95. Plaintiff's EEOC Charge and accompanying letter statement, **EXHIBIT A**, notes that Plantiff was, at the time, still being subjected to ongoing retaliation based on the fact that Plaintiff had filed prior EEOC complaints. The Plaintiff's EEOC Charge also notes that due to the ongoing retaliation she faced, she felt "victimized" and dissuaded from making further

complaints.

96.     The EEOC Charge also notes that some ConEd employees told her that ConEd supervisors

        told them to stay away from the Plaintiff. Plaintiff also reported that some employees told

        her that supervisors including Thomas Mcenery told them that "she likes to get pregnant" so

        she an take time off from work.

97.     Additionally, the Charge also notes, in relevant part, that through April 2016, Plaintiff was

        subjected to hostile and confrontational behavior which Defendant ConEd ignored.

98.     Overall, the Charge details some of the past abuses committed by Defendant ConEd and its

        agents, servants, and employees described herein, including but not limited to, the specific

        acts  committed by Defendant Green as set forth above. Such abuses and the retaliation

        Plaintiff faced form, in part, the basis for Plaintiff's currently pending action against ConEd,

        as detailed above.

99.     That the Plaintiff objected to the aforesaid conduct and complained of it to ether managers,

        supervisory employees and officers of the Defendant.

100.    That despite those complaints, the supervisors, managers, officers, employees and/or agents

        of the Defendant failed and refused to take prompt and proper corrective or remedial action.

101.    That the Defendant and its upper-level supervisors had knowledge of the aforesaid conduct,

        ignored the said conduct and/or failed to take prompt and proper corrective and remedial

        measures to correct said conduct and acquiesced in the discriminatory conduct and

        harassment.

102.    The Plaintiff belongs to one or more protected groups.

103.    The said discriminatory practices and acts of harassment affected a term, condition or

privilege of Plaintiff's employment.

104.  The Plaintiff was treated by the Defendant(s), its supervisors, managers, officers, employees and/or agents in a manner less favorable than others for impermissible reasons.

105.  Defendant ConEd, as Plaintiff's employer, knew or should have known of the discriminatory practices and acts of harassment and repeatedly failed to take prompt and proper corrective or remedial action.

106.  This systematic sexual harassment and discrimination have created and subjected the Plaintiff to a continuing hostile work environment throughout the course of Plaintiff's employment.

107.  This systematic sexual harassment and discrimination of Plaintiff constitutes a violation of Title VII.

108.  This systematic sexual harassment and discrimination of Plaintiff constitutes a violation of the New York State Human Rights Law.

109.  This systematic sexual harassment and discrimination of Plaintiff constitutes a violation of the New York City Human Rights Law.

110.  The ongoing sexual discrimination has created a hostile work environment for Plaintiff in violation of Title VII.

111.  The ongoing sexual discrimination has created a hostile work environment for Plaintiff in violation of the New York State Human Rights Law.

112.  The ongoing sexual discrimination has created a hostile work environment for Plaintiff in violation of the New York City Human Rights Law.

113.  This hostile work environment has constituted a continuous violation of Title VII throughout

the course of Plaintiff's employment culminating in her retaliatory termination.

114.   This hostile work environment has constituted a continuous violation of the New York State Human Rights Law throughout the course of Plaintiff's employment culminating in her retaliatory termination.

115.   This hostile work environment has constituted a continuous violation of the New York City Human Rights Law throughout the course of Plaintiff's employment culminating in her retaliatory termination.

116.   This systematic sexual harassment, discrimination and retaliation has been tolerated by Defendant ConEd throughout the course of Plaintiff's employment.

117.   Despite having actual knowledge of these various complaints, ConEd took no action until judicial intervention left no alternative.

118.   Subsequently, Defendant ConEd enacted the most egregious retaliation and wrongfully terminated the Plaintiff.

119.   The failure of ConEd to address these various and repeated  acts against this Plaintiff and other such personnel until forced to do so was a willful, wanton, malicious and reckless disregard of its legally mandated obligations under Federal law.

120.   The failure of ConEd to address these various and repeated  acts against this Plaintiff and other such personnel until forced to do so was a willful, wanton, malicious and reckless disregard of its legally mandated obligations under New York State law.

121.   That as a result thereof, the Defendant ConEd, is vicariously liable to the Plaintiff for the discriminatory practices and acts of harassment of the Defendants' supervisors, managers, officers, employees and/or agents including specifically Defendant Green.

122. That as a result thereof, the Defendant ConEd is directly liable to the Plaintiff for the sexual harassment perpetrated against Plaintiff by Defendant Green as Defendant ConEd took no meaningful action on Plaintiff's behalf.

123. Defendant ConEd is directly liable to the Plaintiff for the sexual harassment perpetrated against Plaintiff by Defendant Green as Defendant ConEd took no immediate and appropriate corrective steps to address Defendant Green's harassing conduct.

124. Defendant ConEd is directly liable to the Plaintiff for the sexual harassment perpetrated against Plaintiff by Defendant Green as Defendant ConEd failed to take any action or reasonably investigate the incident as reported by Plaintiff.

## AS AND FOR PLAINTIFF'S CAUSES OF ACTION

### AS AND FOR A FIRST CAUSE OF ACTION
### FOR SEXUAL DISCRIMINATION IN VIOLATION OF TITLE VII
### (Against Defendant ConEd)

125. Plaintiff repeats, reiterates and realleges each and every allegation previously stated as if set forth herein fully at length once again.

126. That Defendant ConEd's employment practices and/or policies including the "code of silence" regarding complaints of harassment, were facially discriminatory.

127. That Defendant ConEd's employment practices and/or policies including the tacit condonation of sexual harassment were facially discriminatory.

128. That Defendant ConEd's employment practices and/or policies including the tacit failure to act upon sexual harassment against employees were facially discriminatory.

129. That Plaintiff was subject to ongoing sexual harassment by employees, agents, and servants of Defendant ConEd.

130. That Defendant ConEd had actual notice of the sexual harassment being committed by its employees, agents, and servants.

131. That Defendant ConEd had constructive notice of the sexual harassment being committed by its employees, agents, and servants.

132. That said sexual harassment was so severe and pervasive that it altered the conditions of Plaintiff's employment such that it created an abusive working environment.

133. That the said discriminatory practices and/or policies did not constitute a bona fide occupational qualification reasonably necessary to the normal operation of the Defendants' particular business or enterprise.

134. That said discriminatory acts and practices which occurred on or after January 14, 2016 deprived or tended to deprive the Plaintiff of employment opportunities and/or otherwise adversely affected her status as an employee, because of Plaintiff's sex.

135. That the aforesaid acts of discrimination and harassment against Plaintiff based on the Plaintiff's sex, perpetrated by the Defendant ConEd, its supervisors, managers, officers, employees and/or agents that have occurred from and after January 14, 2016, have constituted an actionable harm to Plaintiff.

136. That acts against Plaintiff based on the Plaintiff's sex by the Defendant, ConEd, its supervisors, managers, officers, employees and/or agents have prior to January 14, 2016, and continued thereafter.

137. That the aforesaid acts against Plaintiff based on the Plaintiff's sex by the Defendant, ConEd, its supervisors, managers, officers, employees and/or agents that have occurred from and after

January 14, 2016, constitute a violation of Title VII.

138. That as a result of the foregoing, the Plaintiff sustained conscious pain and suffering, physical injury, great mental distress, mental anguish, shock, fright and humiliation; was rendered sick, sore and disabled; suffered and still suffers and will continue to suffer bodily pain and mental anguish for some time to come; has been and will be required to seek and obtain medical care and treatment; has been unable to attend to usual vocation and duties; has incurred lost earnings; has lost and/or been actually or constructively terminated and/or discharged from employment; has had her good name and reputation impaired; has had her liberty interest impaired and her professional reputation and competence impugned in such a fashion to effectively put a significant roadblock in her continued ability to practice her profession or trade; and sustained other damages.

139. That by reason of the foregoing, said Plaintiff demands judgment against the Defendant in the amount of $5,000,000.00, as and for compensatory damages

**AS AND FOR A SECOND CAUSE OF ACTION**
**FOR SEX DISCRIMINATION IN VIOLATION OF THE**
**NEW YORK STATE HUMAN RIGHTS LAW**
**(Against Defendant ConEd)**

140. Plaintiff repeats, reiterates and realleges each and every allegation previously stated as if set forth herein fully at length once again.

141. That at all times relevant hereto Defendant ConEd's employment practices and/or policies including the "code of silence" regarding complaints of harassment, were facially discriminatory.

142. That at all times relevant hereto Defendant ConEd's employment practices and/or policies

including the tacit condonation of sexual harassment were facially discriminatory.

143.     That at all times relevant hereto Plaintiff was subject to ongoing sexual harassment by employees, agents, and servants of Defendant ConEd.

144.     That at all times relevant hereto Defendant ConEd had actual notice of the sexual harassment being committed by its employees, agents, and servants.

145.     That at all times relevant hereto Defendant, ConEd, had constructive notice of the sexual harassment being committed by its employees, agents, and servants.

146.     That said sexual harassment was so severe and pervasive that it altered the conditions of Plaintiff's employment such that it created an abusive working environment.

147.     That the said discriminatory practices and/or policies did not constitute a bona fide occupational qualification reasonably necessary to the normal operation of the Defendants' particular business or enterprise.

148.     That said discriminatory acts and practices which occurred on or after February 20, 2015. the applicable Statute of Limitations for NYS Human Rights Law claims, deprived or tended to deprive the Plaintiff of employment opportunities and/or otherwise adversely affected her status as an employee, because of Plaintiff's sex.

149.     That the aforesaid acts of discrimination and harassment against Plaintiff based on the Plaintiff's sex, perpetrated by the Defendant ConEd, its supervisors, managers, officers, employees and/or agents that have occurred from and after February 20, 2015, have constituted an actionable harm to Plaintiff.

150.     That the aforesaid acts against Plaintiff based on the Plaintiff's sex by the Defendant, ConEd, its supervisors, managers, officers, employees and/or agents that have occurred from and

after February 20, 2015, constitute a violation of New York State Human Rights Law.

151.    That as a result of the foregoing, the Plaintiff sustained conscious pain and suffering, physical injury, great mental distress, mental anguish, shock, fright and humiliation; was rendered sick, sore and disabled; suffered and still suffers and will continue to suffer bodily pain and mental anguish for some time to come; has been and will be required to seek and obtain medical care and treatment; has been unable to attend to usual vocation and duties; has incurred lost earnings; has lost and/or been actually or constructively terminated and/or discharged from employment; has had her good name and reputation impaired; has had her liberty interest impaired and her professional reputation and competence impugned in such a fashion to effectively put a significant roadblock in her continued ability to practice her profession or trade; and sustained other damages.

152.    That by reason of the foregoing, said Plaintiff demands judgment against the Defendant in the amount of $5,000,000.00, as and for compensatory damages

### AS AND FOR A THIRD CAUSE OF ACTION
### FOR SEX DISCRIMINATION IN VIOLATION OF THE
### NEW YORK CITY HUMAN RIGHTS LAW
### (Against Defendant ConEd)

153.    Plaintiff repeats, reiterates and realleges each and every allegation previously stated as if set forth herein fully at length once again.

154.    That the Defendant ConEd, engaged in a practice or policy in which female employees were treated differently and less favorably than male employees.

155.    That said practices and/or policies were facially discriminatory.

156.    That the said discriminatory practices and/or policies did not constitute a bona fide

occupational qualification reasonably necessary to the normal operation of the Defendants' particular business or enterprise.

157. That said discriminatory practices which occurred on or after February 20, 2015, the applicable Statute of Limitations for New York City Human Rights Law cases, deprived or tended to deprive the Plaintiff of employment opportunities and/or otherwise adversely affected her status as an employee, because of Plaintiff's sex.

158. That the aforesaid acts of discrimination and harassment against Plaintiff based on the Plaintiff's sex by the Defendant, ConEd, its supervisors, managers, officers, employees and/or agents that have occurred from and after February 20, 2015, has constituted an actionable harm to Plaintiff.

159. That the aforesaid acts against Plaintiff based on the Plaintiff's sex by the Defendant, ConEd, its supervisors, managers, officers, employees and/or agents that have occurred from and after February 20, 2015, constitute a violation of the New York City Human Rights Law.

160. That said violation of the New York City Human Rights Law has caused the Plaintiff to suffer sustained conscious pain and suffering, physical injury, great mental distress, mental anguish, shock, fright and humiliation; was rendered sick, sore and disabled; suffered and still suffers and will continue to suffer bodily pain and mental anguish for some time to come; has been and will be required to seek and obtain medical care and treatment; has been unable to attend to usual vocation and duties; has incurred lost earnings; has lost and/or been actually or constructively terminated and/or discharged from employment; has had her good name and reputation impaired; has had her liberty interest impaired and her professional reputation and competence impugned in such a fashion to effectively put a significant

roadblock in her continued ability to practice her profession or trade; and sustained other damages.

161.    That by reason of the foregoing, said Plaintiff demands judgment against the Defendant in the amount of $5,000,000.00, as and for compensatory damages.

## AS AND FOR A FOURTH CAUSE OF ACTION
## FOR HOSTILE WORK ENVIRONMENT IN VIOLATION OF TITLE VII
### (Against Defendant ConEd)

162.    Plaintiff repeats, reiterates and realleges each and every allegation previously stated as if set forth herein fully at length once again.

163.    That the aforesaid acts against Plaintiff based on Plaintiff's sex by the Defendant, ConEd, its supervisors, managers, officers, employees and/or agents that have occurred from and after January 14, 2016 has constituted an actionable harm to Plaintiff.

164.    That the aforesaid acts against Plaintiff based on the Plaintiff's sex by the Defendant, ConEd, its supervisors, managers, officers, employees and/or agents that have occurred from and after January 14, 2016, constitute a Hostile Work Environment in violation of Title VII.

165.    That as a result of the foregoing, the Plaintiff sustained conscious pain and suffering, physical injury, great mental distress, mental anguish, shock, fright and humiliation; was rendered sick, sore and disabled; suffered and still suffers and will continue to suffer bodily pain and mental anguish for some time to come; has been and will be required to seek and obtain medical care and treatment; has been unable to attend to usual vocation and duties; has incurred lost earnings; has lost and/or been actually or constructively terminated and/or discharged from employment; has had her good name and reputation impaired; has had her liberty interest impaired and her professional reputation and competence impugned in such

a fashion to effectively put a significant roadblock in her continued ability to practice her profession or trade; and sustained other damages.

166. That by reason of the foregoing, said Plaintiff demands judgment against the Defendant in the amount of $5,000,000.00, as and for compensatory damages.

**AS AND FOR A FIFTH CAUSE OF ACTION**
**FOR HOSTILE WORK ENVIRONMENT IN VIOLATION OF**
**NEW YORK STATE HUMAN RIGHTS LAW**
**(Against Defendant ConEd)**

167. Plaintiff repeats, reiterates and realleges each and every allegation previously stated as if set forth herein fully at length once again.

168. That the aforesaid acts against Plaintiff based on Plaintiff's sex by the Defendant, its supervisors, managers, officers, employees and/or agents that have occurred from and after February 20, 2015 has constituted an actionable harm to Plaintiff.

169. That the aforesaid acts against Plaintiff based on the Plaintiff's sex by the Defendant, its supervisors, managers, officers, employees and/or agents that have occurred from and after February 20, 2015 constitute a Hostile Work Environment in violation of the New York State Human Rights Law.

170. This Hostile Work Environment has constituted a harm to Plaintiff.

171. This Hostile Work Environment has constituted a violation of the New York State Human Rights Law.

172. That as a result of the foregoing, the Plaintiff sustained conscious pain and suffering, physical injury, great mental distress, mental anguish, shock, fright and humiliation; was rendered sick, sore and disabled; suffered and still suffers and will continue to suffer bodily

pain and mental anguish for some time to come; has been and will be required to seek and obtain medical care and treatment; has been unable to attend to usual vocation and duties; has incurred lost earnings; has lost and/or been actually or constructively terminated and/or discharged from employment; has had her good name and reputation impaired; has had her liberty interest impaired and her professional reputation and competence impugned in such a fashion to effectively put a significant roadblock in her continued ability to practice her profession or trade; and sustained other damages.

173.   That by reason of the foregoing, said Plaintiff demands judgment against the Defendant in the amount of $5,000,000.00, as and for compensatory damages.

**AS AND FOR A SIXTH CAUSE OF ACTION**
**FOR HOSTILE WORK ENVIRONMENT IN VIOLATION OF**
**NEW YORK CITY HUMAN RIGHTS LAW**
**(Against Defendant ConEd)**

174.   Plaintiff repeats, reiterates and realleges each and every allegation previously stated as if set forth herein fully at length once again.

175.   That the aforesaid acts against Plaintiff based on the Plaintiff's sex by the Defendant, its supervisors, managers, officers, employees and/or agents that have occurred from and after February 20, 2015 has constituted an actionable harm to Plaintiff.

176.   That the aforesaid acts against Plaintiff based on the Plaintiff's sex by the Defendant, its supervisors, managers, officers, employees and/or agents that have occurred from and after February 20, 2015 constitute a Hostile Work Environment in violation of the New York City Human Rights Law.

177.   This Hostile Work Environment has constituted a harm to Plaintiff.

178.   This Hostile Work Environment has constituted a violation of the New York City Human Rights Law.

179.   That as a result of the foregoing, the Plaintiff sustained conscious pain and suffering, physical injury, great mental distress, mental anguish, shock, fright and humiliation; was rendered sick, sore and disabled; suffered and still suffers and will continue to suffer bodily pain and mental anguish for some time to come; has been and will be required to seek and obtain medical care and treatment; has been unable to attend to usual vocation and duties; has incurred lost earnings; has lost and/or been actually or constructively terminated and/or discharged from employment; has had her good name and reputation impaired; has had her liberty interest impaired and her professional reputation and competence impugned in such a fashion to effectively put a significant roadblock in her continued ability to practice her profession or trade; and sustained other damages.

180.   That by reason of the foregoing, said Plaintiff demands judgment against the Defendant in the amount of $5,000,000.00, as and for compensatory damages.

## AS AND FOR A SEVENTH CAUSE OF ACTION
### FOR CONTINUING HOSTILE WORK ENVIRONMENT
### IN VIOLATION OF TITLE VII
#### (Against Defendant ConEd)

181.   Plaintiff repeats, reiterates and realleges each and every allegation previously stated as if set forth herein fully at length once again.

182.   Plaintiff has been repeatedly, intentionally and maliciously retaliated against, discriminated against, threatened, abused and harassed by co-workers, primarily male, but some female co-workers, supervisors, managers and human resource representatives of the Defendant ConEd,

whose harassing and discriminatory conduct has included, but was not limited to: intimidating/hostile and offensive slurs, jokes, comments and inquiries, threatening and abusive verbal communications, ridicule and insults, and overt and unwelcome sexual contact.

183.  Plaintiff was treated differently from other employees based on her sex, was sexually harassed and humiliated, retaliated against, lost the opportunity for promotions, and was denied potential raises, promotions and opportunities for advancement within the Company, including management opportunities, was wrongfully given unfavorable employee evaluations and ratings, was isolated from other employees and denied training, was the subject of intimidation, was verbally threatened and was otherwise treated differently from co-workers based on her sex.

184.  Plaintiff was sexually abused at the hands of Defendant Green during working hours and on the premises of one of the Defendant ConEd's substations on multiple occasions.

185.  That the aforesaid allegations have constituted a continuing hostile work environment for Plaintiff.

186.  That the aforesaid allegations have constituted an actionable harm to Plaintiff.

187.  That the aforesaid statements by the Defendant, its supervisors, managers, officers, employees and/or agents that have occurred from as early as 1993 constitute a continuing hostile work environment in violation of Title VII.

188.  That as a result of the foregoing, the Plaintiff sustained conscious pain and suffering, physical injury, mental distress, mental anguish, shock, fright and humiliation; was rendered sick, sore and disabled; suffered and still suffers and will continue to suffer bodily pain and

mental anguish for some time to come; has been and will be required to seek and obtain medical care and treatment; has been unable to attend to usual vocation and duties; has incurred lost earnings; has lost and/or been actually or constructively terminated and/or discharged from employment; has had her good name and reputation impaired; has had her liberty interest impaired and her professional reputation and competence impugned in such a fashion to effectively put a significant roadblock in her continued ability to practice her profession or trade; and sustained other damages.

189. That by reason of the foregoing, said Plaintiff demands judgment against the Defendant in the amount of $5,000,000.00, as and for compensatory damages.

## AS AND FOR AN EIGHTH CAUSE OF ACTION
### FOR CONTINUING HOSTILE WORK ENVIRONMENT IN VIOLATION OF NEW YORK STATE HUMAN RIGHTS LAW
#### (Against Defendant ConEd)

190. Plaintiff repeats, reiterates and realleges each and every allegation previously stated as if set forth herein fully at length once again.

191. Plaintiff has been repeatedly, intentionally and maliciously retaliated against, discriminated against, threatened, abused and harassed by co-workers, primarily male, but some female co-workers, supervisors, managers and human resource representatives of the Defendant ConEd, whose harassing and discriminatory conduct has included, but was not limited to: intimidating/hostile and offensive slurs, jokes, comments and inquiries, threatening and abusive verbal communications, ridicule and insults, and overt and unwelcome sexual contact.

192. Plaintiff was treated differently from other employees based on her sex, was sexually

harassed and humiliated, retaliated against, lost the opportunity for promotions, and was denied potential raises, promotions and opportunities for advancement within the Company, including management opportunities, was wrongfully given unfavorable employee evaluations and ratings, was isolated from other employees and denied training, was the subject of intimidation, was verbally threatened and was otherwise treated differently from co-workers based on her sex.

193. Plaintiff was sexually abused at the hands of Defendant Green during working hours and on the premises of one of the Defendant ConEd's substations on multiple occasions.

194. That the aforesaid allegations have constituted a continuing hostile work environment for Plaintiff.

195. That the aforesaid allegations have constituted an actionable harm to Plaintiff.

196. That the aforesaid statements by the Defendant, its supervisors, managers, officers, employees and/or agents that have occurred from as early as 1993 constitute a continuing hostile work environment in violation of the New York State Human Rights Law.

197. That as a result of the foregoing, the Plaintiff sustained conscious pain and suffering, physical injury, mental distress, mental anguish, shock, fright and humiliation; was rendered sick, sore and disabled; suffered and still suffers and will continue to suffer bodily pain and mental anguish for some time to come; has been and will be required to seek and obtain medical care and treatment; has been unable to attend to usual vocation and duties; has incurred lost earnings; has lost and/or been actually or constructively terminated and/or discharged from employment; has had her good name and reputation impaired; has had her liberty interest impaired and her professional reputation and competence impugned in such

a fashion to effectively put a significant roadblock in her continued ability to practice her profession or trade; and sustained other damages.

198.  That by reason of the foregoing, said Plaintiff demands judgment against the Defendant in the amount of $5,000,000.00, as and for compensatory damages.

### AS AND FOR A NINTH CAUSE OF ACTION
### FOR CONTINUING HOSTILE WORK ENVIRONMENT IN VIOLATION OF
### NEW YORK CITY HUMAN RIGHTS LAW
### (Against Defendant ConEd)

199.  Plaintiff repeats, reiterates and realleges each and every allegation previously stated as if set forth herein fully at length once again.

200.  Plaintiff has been repeatedly, intentionally and maliciously retaliated against, discriminated against, threatened, abused and harassed by co-workers, primarily male, but some female co-workers, supervisors, managers and human resource representatives of the Defendant ConEd, whose harassing and discriminatory conduct has included, but was not limited to: intimidating/hostile and offensive slurs, jokes, comments and inquiries, threatening and abusive verbal communications, ridicule and insults, and overt and unwelcome sexual contact.

201.  Plaintiff was treated differently from other employees based on her sex, was sexually harassed and humiliated, retaliated against, lost the opportunity for promotions, and was denied potential raises, promotions and opportunities for advancement within the Company, including management opportunities, was wrongfully given unfavorable employee evaluations and ratings, was isolated from other employees and denied training, was the subject of intimidation, was verbally threatened and was otherwise treated differently from

co-workers based on her sex.

202. Plaintiff was sexually abused at the hands of Defendant Green during working hours and on the premises of one of the Defendant ConEd's substations on multiple occasions.

203. That the aforesaid allegations have constituted a continuing hostile work environment for Plaintiff.

204. That the aforesaid allegations have constituted an actionable harm to Plaintiff.

205. That the aforesaid statements by the Defendant, its supervisors, managers, officers, employees and/or agents that have occurred from as early as 1993 constitute a continuing hostile work environment in violation of the New York State Human Rights Law.

206. That as a result of the foregoing, the Plaintiff sustained conscious pain and suffering, physical injury, mental distress, mental anguish, shock, fright and humiliation; was rendered sick, sore and disabled; suffered and still suffers and will continue to suffer bodily pain and mental anguish for some time to come; has been and will be required to seek and obtain medical care and treatment; has been unable to attend to usual vocation and duties; has incurred lost earnings; has lost and/or been actually or constructively terminated and/or discharged from employment; has had her good name and reputation impaired; has had her liberty interest impaired and her professional reputation and competence impugned in such a fashion to effectively put a significant roadblock in her continued ability to practice her profession or trade; and sustained other damages.

207. That by reason of the foregoing, said Plaintiff demands judgment against the Defendant in the amount of $5,000,000,00, as and for compensatory damages.

## AS AND FOR A TENTH CAUSE Of ACTION
### FOR EMPLOYEE HARASSMENT IN VIOLATION OF TITLE VII
### (Against Defendant ConEd)

208.  Plaintiff repeats, reiterates and realleges each and every allegation previously stated as if set forth herein fully at length once again.

209.  That throughout the aforesaid period, Plaintiff filed reports and claims setting forth the sexual harassment she has been subjected to by various ConEd employees, and notably following the incident in September 2016, the Plaintiff filed reports and claims setting forth the aforesaid sexual harassment by Defendant Green.

210.  That Defendant ConEd had actual notice and/or knowledge of the discriminatory conduct committed by employee Green and other ConEd employees.

211.  That Defendant ConEd knew of the harassment and failed to take any corrective action with respect to Defendant Green, and instead, with regard to the sexual harassment by Robin Yang, scheduled Plaintiff to be fit tested by Yang, even after the sexual harassment was reported.

212.  That despite the fact Defendant ConEd had actual notice and/or constructive knowledge of the aforesaid discriminatory conduct, ConEd failed to take any corrective action

213.  That as a result of the foregoing, the Plaintiff sustained conscious pain and suffering, physical injury, great mental distress, mental anguish, shock, fright and humiliation; was rendered sick, sore and disabled; suffered and still suffers and will continue to suffer bodily pain and mental anguish for some time to come; has been and will be required to seek and obtain medical care and treatment; has been unable to attend to usual vocation and duties; has incurred lost earnings; has lost and/or been actually or constructively terminated and/or

discharged from employment; has had her good name and reputation impaired; has had her liberty interest impaired and her professional reputation and competence impugned in such a fashion to effectively put a significant roadblock in her continued ability to practice her profession or trade; and sustained other damages.

214. That by reason of the foregoing, said Plaintiff demands judgment against the Defendant in the amount of $5,000,000.00, as and for compensatory damages.

## AS AND FOR AN ELEVENTH CAUSE Of ACTION
### FOR EMPLOYEE HARASSMENT IN VIOLATION OF THE NEW YORK STATE HUMAN RIGHTS LAW
#### (Against Defendant ConEd)

215. Plaintiff repeats, reiterates and realleges each and every allegation previously stated as if set forth herein fully at length once again.

216. That throughout the aforesaid period, Plaintiff filed reports and claims setting forth the sexual harassment she has been subjected to by various ConEd employees, and notably following the incident in September 2016, the Plaintiff filed reports and claims setting forth the aforesaid sexual harassment by Defendant Green.

217. That Defendant ConEd had actual notice and/or knowledge of the discriminatory conduct committed by Defendant's employee Green and other ConEd employees.

218. That Defendant ConEd acquiesced in such conduct and/or failed to take immediate and appropriate corrective action with respect to Defendant Green, and instead, with regard to the sexual harassment by Robin Yang, scheduled Plaintiff to be fit tested by Yang, even after the sexual harassment was reported.

219. That by reason of Defendant ConEd's acquiescence ConEd became a party to the sexual

harassment.

220.   That despite the fact Defendant ConEd had actual notice and/or knowledge of the aforesaid sexual harassment, ConEd condoned such conduct after becoming aware of it by forgiving/accepting such conduct.

221.   That as a result of the foregoing, the Plaintiff sustained conscious pain and suffering, physical injury, great mental distress, mental anguish, shock, fright and humiliation; was rendered sick, sore and disabled; suffered and still suffers and will continue to suffer bodily pain and mental anguish for some time to come; has been and will be required to seek and obtain medical care and treatment; has been unable to attend to usual vocation and duties; has incurred lost earnings; has lost and/or been actually or constructively terminated and/or discharged from employment; has had her good name and reputation impaired; has had her liberty interest impaired and her professional reputation and competence impugned in such a fashion to effectively put a significant roadblock in her continued ability to practice her profession or trade; and sustained other damages.

222.   That by reason of the foregoing, said Plaintiff demands judgment against the Defendant in the amount of $5,000,000.00, as and for compensatory damages.

## AS AND FOR A TWELFTH CAUSE Of ACTION
### FOR EMPLOYEE HARASSMENT IN VIOLATION OF
### NEW YORK CITY HUMAN RIGHTS LAW
### (Against Defendant ConEd)

223.   Plaintiff repeats, reiterates and realleges each and every allegation previously stated as if set forth herein fully at length once again.

224.   That throughout the aforesaid period, Plaintiff filed reports and claims setting forth the

sexual harassment she has been subjected to by various ConEd employees, and notably following the incident in September 2016, the Plaintiff filed reports and claims setting forth the aforesaid sexual harassment by Defendant Green.

225. That Defendant ConEd knew or should have known of the sexual harassment Defendant's employee Green and other ConEd employees by virtue of Plaintiff's complaints.

226. That Defendant ConEd acquiesced in such conduct and/or failed to take immediate and appropriate corrective action with respect to Defendant Green, and instead, with regard to the sexual harassment by Robin Yang, scheduled Plaintiff to be fit tested by Yang, even after the sexual harassment was reported.

227. That Defendant ConEd should be deemed to have knowledge of the aforesaid sexual harassment as the conduct was known to other ConEd employees/agents who exercised managerial/supervisory responsibility.

228. That Defendant ConEd should have known of the employees'/agents' sexual harassment and failed to exercise reasonable diligence to prevent the aforesaid sexual harassment.

229. As such the sexual harassment by Defendant Green and others should be imputed to Defendant ConEd.

230. That as a result of the foregoing, the Plaintiff sustained conscious pain and suffering, physical injury, great mental distress, mental anguish, shock, fright and humiliation; was rendered sick, sore and disabled; suffered and still suffers and will continue to suffer bodily pain and mental anguish for some time to come; has been and will be required to seek and obtain medical care and treatment; has been unable to attend to usual vocation and duties; has incurred lost earnings; has lost and/or been actually or constructively terminated and/or

discharged from employment; has had her good name and reputation impaired; has had her liberty interest impaired and her professional reputation and competence impugned in such a fashion to effectively put a significant roadblock in her continued ability to practice her profession or trade; and sustained other damages.

231. That by reason of the foregoing, said Plaintiff demands judgment against the Defendant in the amount of $5,000,000.00, as and for compensatory damages.

### AS AND FOR A THIRTEENTH CAUSE OF ACTION
### FOR RETALIATION IN VIOLATION OF TITLE VII
#### (Against Defendant ConEd)

232. Plaintiff repeats, reiterates and realleges each and every allegation previously stated as if set forth herein fully at length once again.

233. That throughout the aforesaid period, but notably from and after January 14, 2016, the Plaintiff filed reports and claims setting forth the aforesaid discriminatory practices and acts of harassment by employees of Defendant, ConEd.

234. That the filing of the said reports and claims constituted "protected activities" pursuant Title VII.

235. That the Defendants, knowing of Plaintiff's participation in the said protected activities, retaliated against the Plaintiff by taking adverse employment action including but not limited to scheduling a fit test with the employee against whom Plaintiff had made a sexual harassment complaint and ultimately wrongfully terminating Plaintiff's employment.

236. That the said adverse employment action were taken as a direct causal result of Plaintiff's participation in the aforesaid protected activity and as a direct causal result of Plaintiff's complaints of discrimination and harassment.

237.    That the said retaliatory actions by the Defendants were in violation of Title VII.

238.    That said policies and/or practices cannot be justified as a business necessity.

239.    That as a result of the foregoing, the Plaintiff sustained conscious pain and suffering, physical injury, great mental distress, mental anguish, shock, fright and humiliation; was rendered sick, sore and disabled; suffered and still suffers and will continue to suffer bodily pain and mental anguish for some time to come; has been and will be required to seek and obtain medical care and treatment; has been unable to attend to usual vocation and duties; has incurred lost earnings; has lost and/or been actually or constructively terminated and/or discharged from employment; has had her good name and reputation impaired; has had her liberty interest impaired and her professional reputation and competence impugned in such a fashion to effectively put a significant roadblock in her continued ability to practice her profession or trade; and sustained other damages.

240.    That by reason of the foregoing, said Plaintiff demands judgment against the Defendant in the amount of $5,000,000.00, as and for compensatory damages.

### AS AND FOR A FOURTEENTH CAUSE Of ACTION
### FOR RETALIATION IN VIOLATION OF
### NEW YORK STATE HUMAN RIGHTS LAW
#### (Against Defendant ConEd)

241.    Plaintiff repeats, reiterates and realleges each and every allegation previously stated as if set forth herein fully at length once again.

242.    That throughout the aforesaid period, but notably from and after February 20, 2015, the Plaintiff filed reports and claims setting forth the aforesaid discriminatory practices and acts of harassment by employees of the Defendant, ConEd.

243. That the filing of the said reports and claims constituted "protected activities" pursuant to the New York State Human Rights Law.

244. That the Defendants, knowing of Plaintiff's participation in the said protected activities, retaliated against the Plaintiff by taking adverse employment action including but not limited to scheduling a fit test with the employee against whom Plaintiff had made a sexual harassment complaint and ultimately wrongfully terminating Plaintiff's employment.

245. That the said adverse employment actions were taken as a direct causal result of Plaintiff's participation in the aforesaid protected activity and as a direct causal result of Plaintiff's complaints of discrimination and harassment.

246. That the said retaliatory actions by the Defendants were in violation of the New York State Human Rights Law.

247. That said policies and/or practices cannot be justified as a business necessity.

248. That as a result of the foregoing, the Plaintiff sustained conscious pain and suffering, physical injury, great mental distress, mental anguish, shock, fright and humiliation; was rendered sick, sore and disabled; suffered and still suffers and will continue to suffer bodily pain and mental anguish for some time to come; has been and will be required to seek and obtain medical care and treatment; has been unable to attend to usual vocation and duties; has incurred lost earnings; has lost and/or been actually or constructively terminated and/or discharged from employment; has had her good name and reputation impaired; has had her liberty interest impaired and her professional reputation and competence impugned in such a fashion to effectively put a significant roadblock in her continued ability to practice her profession or trade; and sustained other damages.

249.    That by reason of the foregoing, said Plaintiff demands judgment against the Defendant in the amount of $5,000,000.00, as and for compensatory damages.

## AS AND FOR A FIFTEENTH CAUSE Of ACTION
### FOR RETALIATION IN VIOLATION OF
### NEW YORK CITY HUMAN RIGHTS LAW
#### (Against Defendant ConEd)

250.    Plaintiff repeats, reiterates and realleges each and every allegation previously stated as if set forth herein fully at length once again.

251.    That throughout the aforesaid period, but notably from and after February 20, 2015, the Plaintiff filed reports and claims setting forth the aforesaid discriminatory practices and acts of harassment with supervisory employees of the Defendant.

252.    That the filing of the said reports and claims constituted "protected activities" pursuant to the New York City Human Rights Law.

253.    That the Defendants, knowing of Plaintiff's participation in the said protected activities, retaliated against the Plaintiff by taking adverse employment action including but not limited to scheduling a fit test with the employee against whom Plaintiff had made a sexual harassment complaint and ultimately wrongfully terminating Plaintiff's employment.

254.    That the said adverse employments action were taken as a direct causal result of Plaintiff's participation in the aforesaid protected activity and as a direct causal result of Plaintiff's complaints of discrimination and harassment.

255.    That the said retaliatory actions by the Defendants were in violation of the New York City Human Rights Law.

256.    That said policies and/or practices cannot be justified as a business necessity.

257.   That as a result of the foregoing, the Plaintiff sustained conscious pain and suffering, physical injury, great mental distress, mental anguish, shock, fright and humiliation; was rendered sick, sore and disabled; suffered and still suffers and will continue to suffer bodily pain and mental anguish for some time to come; has been and will be required to seek and obtain medical care and treatment; has been unable to attend to usual vocation and duties; has incurred lost earnings; has lost and/or been actually or constructively terminated and/or discharged from employment; has had her good name and reputation impaired; has had her liberty interest impaired and her professional reputation and competence impugned in such a fashion to effectively put a significant roadblock in her continued ability to practice her profession or trade; and sustained other damages.

258.   That by reason of the foregoing, said Plaintiff demands judgment against the Defendant in the amount of $5,000,000.00, as and for compensatory damages.

## AS AND FOR A SIXTEENTH CAUSE Of ACTION
### FOR WRONGFUL TERMINATION
### (Against Defendant ConEd)

259.   Plaintiff repeats, reiterates and realleges each and every allegation previously stated as if set forth herein fully at length once again.

260.   Plaintiff, as a black West India female, is no doubt part of a protected class.

261.   Up to and including the time of her termination, Plaintiff was performing her job duties in a satisfactory manner.

262.   As a consequence of exercising her protected rights, including but not limited to, filing EEO complaints, Plaintiff suffered adverse employment actions described herein, culminating in her termination.

263. The adverse employment actions Plaintiff suffered occurred under circumstances giving rise to an inference of discrimination.

264. That as a result of the foregoing, the Plaintiff sustained conscious pain and suffering, physical injury, great mental distress, mental anguish, shock, fright and humiliation; was rendered sick, sore and disabled; suffered and still suffers and will continue to suffer bodily pain and mental anguish for some time to come; has been and will be required to seek and obtain medical care and treatment; has been unable to attend to usual vocation and duties; has incurred lost earnings; has lost and/or been actually or constructively terminated and/or discharged from employment; has had her good name and reputation impaired; has had her liberty interest impaired and her professional reputation and competence impugned in such a fashion to effectively put a significant roadblock in her continued ability to practice her profession or trade; and sustained other damages.

265. That by reason of the foregoing, said Plaintiff demands judgment against the Defendant in the amount of $5,000,000.00, as and for compensatory damages

## AS AND FOR AN SEVENTEENTH CAUSE OF ACTION
### FOR NEGLIGENT HIRING
#### (Against Defendant ConEd)

266. Plaintiff repeats, reiterates and realleges each and every allegation previously stated as if set forth herein fully at length once again.

267. Upon information and belief Defendant ConEd failed to properly investigate the background, condition and propensities and suitability of Green for the position at the time he was hired.

268. The aforesaid failures constitute negligence in the hiring, and investigation of Defendant Green by Defendant ConEd.

269. Such failure constitutes negligence on the part of the Defendant ConEd.

270. That the Defendant ConEd, by its agents, servants and/or employees have failed to comply with their non-delegable duties to the Plaintiff.

271. Such failures by the Defendant ConEd caused injuries to the Plaintiff.

272. Plaintiff in no way contributed to said injuries.

273. The Plaintiff is therefore due compensation from the Defendants.

274. That as a result of the foregoing, the Plaintiff sustained conscious pain and suffering, physical injury, great mental distress, mental anguish, shock, fright and humiliation; was rendered sick, sore and disabled; suffered and still suffers and will continue to suffer bodily pain and mental anguish for some time to come; has been and will be required to seek and obtain medical care and treatment; has been unable to attend to usual vocation and duties; has incurred lost earnings; has lost and/or been actually or constructively terminated and/or discharged from employment; has had her good name and reputation impaired; has had her liberty interest impaired and her professional reputation and competence impugned in such a fashion to effectively put a significant roadblock in her continued ability to practice her profession or trade; and sustained other damages.

275. That by reason of the foregoing, said Plaintiff demands judgment against the Defendant in the amount of $5,000,000.00, as and for compensatory damages.

## AS AND FOR A EIGHTEENTH CAUSE OF ACTION
### FOR NEGLIGENT TRAINING AND RETENTION
#### (Against Defendant ConEd)

276. Plaintiff repeat, restate, and reiterate each and every statement and allegation made previously heretofore with the same force and effect as if set forth fully at length once and again.

277. Upon information and belief, Defendant ConEd had notice of Defendant Green's lack of fitness and unsuitability for his position.

278. Upon information and belief Defendant ConEd failed to properly train, review and assess the conduct and condition of Green during the tenure of his employment with ConEd.

279. The aforesaid failures constitute negligence in the training, review of and retention of Defendant Green, an unsuitable employee, on the part of the Defendant ConEd.

280. Such failures constitute negligence on the part of the Defendant ConEd.

281. Defendant ConEd, by its agents, servants and/or employees have failed to comply with their non-delegable duties to the Plaintiff.

282. Such failures by the Defendants caused injuries to the Plaintiff.

283. Plaintiff in no way contributed to said injuries.

284. The Plaintiff is therefore due compensation from the Defendants.

285. That as a result of the foregoing, the Plaintiff sustained conscious pain and suffering, physical injury, great mental distress, mental anguish, shock, fright and humiliation; was rendered sick, sore and disabled; suffered and still suffers and will continue to suffer bodily pain and mental anguish for some time to come; has been and will be required to seek and obtain medical care and treatment; has been unable to attend to usual vocation and duties; has incurred lost earnings; has lost and/or been actually or constructively terminated and/or discharged from employment; has had her good name and reputation impaired; has had her liberty interest impaired and her professional reputation and competence impugned in such a fashion to effectively put a significant roadblock in her continued ability to practice her profession or trade; and sustained other damages.

286.    That by reason of the foregoing, said Plaintiff demands judgment against the Defendant in the amount of $5,000,000.00, as and for compensatory damages.

## AS AND FOR AN NINETEENTH CAUSE OF ACTION
### FOR NEGLIGENT SUPERVISION
### (Against Defendant ConEd)

287.    Plaintiff repeats, restates, and reiterates each and every statement and allegation made previously heretofore with the same force and effect as if set forth fully at length once and again.

288.    Upon information and belief, Defendant ConEd had notice of Defendant Green's lack of fitness for his position.

289.    Upon information and belief Defendant ConEd failed to properly supervise Defendant Green during the tenure of his employment with Defendant ConEd.

290.    The aforesaid failures constitute negligence in the supervision of Defendant Green on the part of the Defendant ConEd.

291.    Such failures constitute negligence on the part of the Defendant, ConEd.

292.    Defendant ConEd, by its agents, servants and/or employees has failed to comply with its non-delegable duties to the Plaintiff.

293.    Such failures by the Defendant ConEd caused injuries to the Plaintiff.

294.    Said injuries were in no way contributed to by Plaintiff herein.

295.    The Plaintiff js therefore due compensation from the Defendants.

296.    That as a result of the foregoing, the Plaintiff sustained conscious pain and suffering, physical injury, great mental distress, mental anguish, shock, fright and humiliation; was rendered sick, sore and disabled; suffered and still suffers and will continue to suffer bodily pain and mental

anguish for some time to come; has been and will be required to seek and obtain medical care and treatment; has been unable to attend to usual vocation and duties; has incurred lost earnings; has lost and/or been actually or constructively terminated and/or discharged from employment; has had her good name and reputation impaired; has had her liberty interest impaired and her professional reputation and competence impugned in such a fashion to effectively put a significant roadblock in her continued ability to practice her profession or trade; and sustained other damages.

297.    That by reason of the foregoing, said Plaintiff demands judgment against the Defendant in the amount of $5,000,000.00, as and for compensatory damages.

## AS AND FOR AN TWENTIETH CAUSE OF ACTION
### FOR ASSAULT
### (Against Defendant Green)

298.    Plaintiff repeats, reiterates and realleges each and every allegation previously stated as if set forth herein fully at length once again.

299.    The aforesaid injuries to Plaintiff suffered by Plaintiff in or about September of 2016, were the result of, caused and occasioned through and by reason of the intentional, reckless, careless, wanton, vicious, and unlawful acts of Defendant Green.

300.    The aforesaid injuries to Plaintiff in or about September of 2016, were the result of, caused and occasioned through and by reason of the unlawful assault and batteries on Plaintiff by Defendant Green.

301.    That in or about September of 2016, Defendant Green intentionally placed Plaintiff in apprehension of imminent, harmful, or offensive contact by placing his hand on the Plaintiff's behind against her will and without her consent.

302.  That in a separate incident in or about September of 2016, Defendant Green intentionally placed Plaintiff in apprehension of imminent, harmful, or offensive contact by forcibly kissing the Plantiff against her will and without her consent.

303.  Defendant Green had the ability to bring about the harmful and offensive bodily contact, and did in fact bring about same when he touched the Plaintiff's behind against her will and without her consent.

304.  Defendant Green had the ability to bring about the harmful and offensive bodily contact, and did in fact bring about same when he forcibly kissed the Plaintiff against her will and without her consent.

305.  That as a result of the foregoing, the Plaintiff sustained conscious pain and suffering, physical injury, great mental distress, mental anguish, shock, fright and humiliation; was rendered sick, sore and disabled; suffered and still suffers and will continue to suffer bodily pain and mental anguish for some time to come; has been and will be required to seek and obtain medical care and treatment; has been unable to attend to usual vocation and duties; has incurred lost earnings; has lost and/or been actually or constructively terminated and/or discharged from employment; has had her good name and reputation impaired; has had her liberty interest impaired and her professional reputation and competence impugned in such a fashion to effectively put a significant roadblock in her continued ability to practice her profession or trade; and sustained other damages.

306.  That by reason of the foregoing, said Plaintiff demands judgment against the Defendant in the amount of $5,000,000.00, as and for compensatory damages.

## AS AND FOR AN TWENTY-FIRST CAUSE OF ACTION
### FOR BATTERY
### (Against Defendant Green)

307.   Plaintiff repeats, reiterates and realleges each and every allegation previously stated as if set forth herein fully at length once again.

308.   The aforesaid injuries to Plaintiff suffered by Plaintiff in or about September of 2016, were the result of, caused and occasioned through and by reason of the intentional, careless, reckless, wanton, vicious, and unlawful acts of Defendant Green.

309.   The aforesaid injuries to Plaintiff in or about September of 2016, were the result of, caused and occasioned through and by reason of the unlawful assault and batteries on Plaintiff by Defendant Green.

310.   That in or about September of 2016, Defendant Green intentionally and in an offensive manner, placed his hand on the Plaintiff's behind against her will and without her consent.

311.   That in a separate incident in or about September of 2016, Defendant Green intentionally and in an offensive manner, forcibly kissed Plaintiff against her will and without her consent.

312.   Defendant Green had the ability to bring about the harmful and offensive bodily contact, and did in fact bring about same when he touched the Plaintiff's behind against her will  and without her consent.

313.   Defendant Green had the ability to bring about the harmful and offensive bodily contact, and did in fact bring about same when he forcibly kissed Plaintiff against her will and without her consent.

314.   That as a result of the foregoing, the Plaintiff sustained conscious pain and suffering, physical injury, great mental distress, mental anguish, shock, fright and humiliation; was rendered sick,

sore and disabled; suffered and still suffers and will continue to suffer bodily pain and mental anguish for some time to come; has been and will be required to seek and obtain medical care and treatment; has been unable to attend to usual vocation and duties; has incurred lost earnings; has lost and/or been actually or constructively terminated and/or discharged from employment; has had her good name and reputation impaired; has had her liberty interest impaired and her professional reputation and competence impugned in such a fashion to effectively put a significant roadblock in her continued ability to practice her profession or trade; and sustained other damages.

315.  That by reason of the foregoing, said Plaintiff demands judgment against the Defendant in the amount of $5,000,000.00, as and for compensatory damages.

## AS AND FOR AN TWENTY-SECOND CAUSE OF ACTION
### FOR PRIMA FACIE TORT
#### (Against Defendant ConEd)

316.  Plaintiff repeats, restates, and reiterates each and every statement made previously heretofore with the same force and effect as if set forth fully at length once and again.

317.  Plaintiff previously made complaints of discriminatory behavior and sexual harassment as against Defendant ConEd's employee Robin Yang.

318.  Despite these complaints, Defendant ConEd, continued to have Plaintiff supervised by Robin Yang, thereby intentionally allowing Robin Yang to continue to discriminate and sexually harass Plaintiff.

319.  Defendant could have removed Robin Yang from supervisory capacity of Plaintiff, but took no steps to protect Plaintiff thereby intentionally putting Plaintiff in harm's way.

320.  While it is recognized that it was otherwise lawful for Defendant ConEd to have Robin Yang

in a supervisory capacity, the discriminatory behavior and sexual harassment would not have

occurred had Defendant ConEd removed Robin Yang from a supervisory capacity with regard

to Plaintiff.

321.    Plaintiff has suffered injuries comprising a *Prima Facie* Tort.

322.    As a result of the discriminatory behavior and sexual harassment suffered by Plaintiff at the

hands of Defendant ConEd's employee Robin Yang, Plaintiff has suffered special damages

including but not limited to unpaid and unreimbursed medical expenses, travel expenses to and

from medical appointments, hospital and prescription medicine expenses, as well as lost

wages, all in an amount to be determined at the trial of this matter.

323.    That by reason of the foregoing, said Plaintiff demands judgment against the Defendant in the

amount of $5,000,000.00, as and for compensatory damages.

## AS AND FOR AN TWENTY-THIRD CAUSE OF ACTION
## FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (Against Defendant Green)

324.    Plaintiff repeats, reiterates and realleges each and every allegation previously stated as if set

forth herein fully at length once again.

325.    The aforesaid injuries to Plaintiff suffered by Plaintiff in or about September of 2016, were the

result of, caused and occasioned through and by reason of the intentional, wanton, vicious, and

unlawful acts of Defendant Green.

326.    Plaintiff's injuries including but not limited to Intentional Infliction of Emotional Distress,

were the direct result of, caused and occasioned through and by reason of the intentional acts

of Defendant Green having failed to exercise due and proper care in the treatment of Plaintiff.

327.    The acts committed by Defendant Green against the Plaintiff were extreme and outrageous as

a matter of law.

328.    Defendant Green intended to cause and/or acted in disregard of a substantial probability of causing severe emotional distress to Plaintiff by touching the Plaintiff's behind against her will and without her consent.

329.    Defendant Green intended to cause and/or acted in disregard of a substantial probability of causing severe emotional distress to Plaintiff by forcibly kissing and/or touching the Plaintiff against her will and without hr consent.

330.    There is a direct and causal connection between Defendant Green's conduct and the Plaintiff's injuries.

331.    As a direct and proximate result of Defendant Green's actions, Plaintiff has sustained severe emotional distress.

332.    That as a result of the foregoing, the Plaintiff sustained conscious pain and suffering, physical injury, great mental distress, mental anguish, shock, fright and humiliation; was rendered sick, sore and disabled; suffered and still suffers and will continue to suffer bodily pain and mental anguish for some time to come; has been and will be required to seek and obtain medical care and treatment; has been unable to attend to usual vocation and duties; has incurred lost earnings; has lost and/or been actually or constructively terminated and/or discharged from employment; has had her good name and reputation impaired; has had her liberty interest impaired and her professional reputation and competence impugned in such a fashion to effectively put a significant roadblock in her continued ability to practice her profession or trade; and sustained other damages.

333.    That by reason of the foregoing, said Plaintiff demands judgment against the Defendant in the

amount of $5,000,000.00, as and for compensatory damages.

## AS AND FOR AN TWENTY-FOURTH CAUSE OF ACTION
### FOR NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
#### (Against Defendant Green)

334.    Plaintiff repeats, reiterates and realleges each and every allegation previously stated as if set forth herein fully at length once again.

335.    The aforesaid injuries to Plaintiff suffered by Plaintiff in or about September of 2016, were the result of, caused and occasioned through and by reason of the careless, reckless, negligent, wanton, vicious, and unlawful acts of Defendant Green.

336.    Plaintiff's injuries including but not limited to Negligent Infliction of Emotional Distress, were the direct result of, caused and occasioned through and by reason of the carelessness, recklessness and negligence of Defendant GREEN having failed to exercise due and proper care in the treatment of Plaintiff.

337.    The acts committed by Defendant Green, including but not limited to, placing his hand on the PLAINTIFF's behind against her will have caused Plaintiff to sustain mental, emotional injuries and/or physical injuries.

338.    The acts committed by Defendant Green, including but not limited to, forcibly kissing and/or touching the PLAINTIFF against her will have caused Plaintiff to sustain mental, emotional injuries and/or physical injuries.

339.    Defendant Green's negligent actions caused the Plaintiff fright, anxiety causing her to sustain mental, and emotional, and physical injuries.

340.    Defendant Green owed Plaintiff a specific duty which he breached.

341.    Plaintiff was a protected group to which Defendant Green owed a specific duty and which he

breached.

342.    There is a direct and causal connection between Defendant Green's conduct and the Plaintiff's injuries.

343.    As a direct and proximate result of Defendant Green's actions Plaintiff has sustained Negligent Infliction of Emotional Distress.

344.    That as a result of the foregoing, the Plaintiff sustained conscious pain and suffering, physical injury, great mental distress, mental anguish, shock, fright and humiliation; was rendered sick, sore and disabled; suffered and still suffers and will continue to suffer bodily pain and mental anguish for some time to come; has been and will be required to seek and obtain medical care and treatment; has been unable to attend to usual vocation and duties; has incurred lost earnings; has lost and/or been actually or constructively terminated and/or discharged from employment; has had her good name and reputation impaired by publication of the aforesaid discriminatory words and conduct; has had her liberty interest impaired and her professional reputation and competence impugned in such a fashion to effectively put a significant roadblock in her continued ability to practice her profession or trade; and sustained other damages.

345.    That by reason of the foregoing, said Plaintiff demands judgment against the Defendant in the amount of $5,000,000.00, as and for compensatory damages.


## **PRAYER FOR RELIEF**

**WHEREFORE**, the Plaintiff requests an Order to issue from the Court granting judgment against the Defendant:

a.      on the first cause of action in the sum of $5,000,000.00;

b.      on the second cause of action in the sum of $5,000,000.00;

c.      on the third cause of action in the sum of $5,000,000.00;

d.      on the fourth cause of action in the sum of $5,000,000.00;

e.      on the fifth cause of action in the sum of $5,000,000.00;

f.      on the sixth cause of action in the sum of $5,000,000.00;

g.      on the seventh cause of action in the sum of $5,000,000.00;

h.      on the eighth cause of action in the sum of $5,000,000.00;

I.      on the ninth cause of action in the sum of $5,000,000.00;

j.      on the tenth cause of action in the sum of $5,000,000.00;

k.      on the eleventh cause of action in the sum of $5,000,000,00;

l.      on the twelfth cause of action in the sum of $5,000,000.00;

m.      on the thirteenth cause of action in the sum of $5,000,000;

n.      on the fourteenth cause of action in the sum of $5,000,000;

o.      on the fifteenth cause of action in the sum of $5,000,000;

p.      on the sixteenth cause of action in the sum of $5,000,000;

q.      on the seventeenth cause of action in the sum of $5,000,000;

q.      on the eighteenth cause of action in the sum of $5,000,000;

r.      on the nineteenth cause of action in the sum of $5,000,000;

s.      on the twentieth cause of action in the sum of $5,000,000;

t.      on the twenty-first cause of action in the sum of $5,000,000;

u.      on the twenty-second cause of action in the sum of $5,000,000;

v.      on the twenty-third cause of action in the sum of $5,000,000;

w.      on the twenty-fourth cause of action in the sum of $5,000,000

x.      punitive damages against the Defendant in the amount of $10,000,000.00;

y.      attorneys fees in an amount to be assessed by the Court; and

z.      any other just and further relief this Court may so determine, together with interest, costs and

disbursements.

Dated:  White Plains, New York
        February 20, 2018

Jasne & Florio, L.L.P.
*Attorneys for Plaintiff*

Hugh G. Jasne, (HGJ -5041)
30 Glenn Street - suite 103
White Plains, New York 10603
Tel: 914 997-1212 / Fax: 914 682-8692
hgj@jasneflorio.com

**REQUEST FOR TRIAL BY JURY**

In accord with FRCP 38, Plaintiff hereby requests a trial by jury as to all matters and

issues submitted to the Court in any trial of this action.

Hugh G. Jasne, Esq. (HGJ-5041)

## VERIFICATION

STATE OF NEW YORK         )
                               ) ss.:

COUNTY OF WESTCHESTER     )

        SHERRY GRIMES-JENKINS, being duly sworn, deposes and states under penalty of

perjury as follows:

        I am the PLAINTIFF in the within action, and I have read the foregoing VERIFIED

COMPLAINT, and know the contents thereof, and the same is true to my own knowledge, except

as to those matters therein stated to be alleged upon information and belief, and that as to those

matters, I believe them to be true.

_Sherry Grimes-Jenkins_

Sherry Grimes-Jenkins

Sworn to before me this
20 day of February, 2018.

Notary Public

HUGH G. JASNE
Notary Public, State of New York
No. 02JA4962433
Qualified in Westchester County
Commission Expires February 20, 2019